IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF AMERICA,

  v.

CHRISTOPHER LASHER,

    Defendant.

CRIMINAL ACTION FILE NO.

4:18-CR-00003-MLB-WEJ-18

## NON-FINAL REPORT AND RECOMMENDATION RE: DEFENDANT LASHER'S MOTION TO SUPPRESS INTERCEPTED COMMUNICATIONS [556]

This matter is before the Court on defendant Christopher Lasher's Motion to Suppress Intercepted Communications Pursuant to Title III [556]. For the reasons stated below, the undersigned **RECOMMENDS** that said Motion be **DENIED**.

## I.   BACKGROUND

On February 8, 2018, a grand jury in this District returned an Indictment [1] charging Christopher Lasher and others with violations of federal law, including RICO conspiracy (Count 1), conspiracy to possess and distribute controlled substances and substantive drug offenses (Counts 2, 19), carjacking (Count 3), attempted murder (Counts 4, 6, 13-14), kidnapping (Counts 9, 11), maiming (Count 10), assault (Count 12), and various firearms violations (Counts 5, 7-8, 15-18, 20-

21).  The charges are based on the defendants' alleged activities as members or associates of a criminal enterprise known as the Ghostface Gangsters ("GFG"). The Indictment charges defendant Lasher in Count 2 with Conspiracy to Traffic a Controlled Substance and alleges that he is responsible for the distribution of at least 500 grams of methamphetamine, a Schedule II controlled substance.[1]

During the investigation of this case, in addition to search warrants and other investigative procedures, between April 15 and November 22, 2016, law enforcement obtained a number of orders from judges of the Superior Court of Cobb County, Georgia, authorizing electronic surveillance of telephones allegedly being used to facilitate criminal activity.  Defendant Lasher was initially named as a Target Subject in an "Order Authorizing the Interception of Wire and Electronic Communications (Target Telephone # 1 (Renewal) and Target Telephone # 3)," issued May 13, 2016 (MCS-COBB WIRE-0044-0057).  This Order was obtained following submission of a May 13, 2016 "Third Affidavit" authored by Eric Smith, a Smyrna, Georgia police officer then tasked to the Marietta Cobb Smyrna

_____

[1] The grand jury returned a Superseding Indictment [279] on August 22, 2018.  The Superseding Indictment adds three defendants and new overt acts and substantive charges involving drug sales, firearms charges, and witness tampering. However, the charges against Defendant Lasher are unchanged.

("MCS") Organized Crime Task Force.   (MCS-COBB WIRE-0219-0250.)

Christopher Lasher was first identified as the user of Target Telephone # 4 ("TT#4,"

with the number, 470-509-9122) in Officer Smith's "Fourth Affidavit," dated June

1, 2016.  (MCS-COBB WIRE-0272-0316.)  That Fourth Affidavit led to issuance

of an "Order Authorizing the Interception of Wire and Electronic Communications

(Target Telephone # 4)," dated June 1, 2016.  (MCS-COBB WIRE-0317-0330.)

Defendant Lasher asserts that he has standing to challenge all of the wiretap

orders and resulting interceptions because he is an "aggrieved person" as defined

in 18 U.S.C. § 2510(11).[2]  Defendant further argues that (1) all of the interception

orders are general warrants lacking probable cause; (2) the Government failed to

demonstrate any necessity for the use of electronic surveillance; (3) the recordings

were not timely sealed; (4) monitoring agents did not comply with minimization

requirements; (5) no inventory notice was served, and there was no postponement

authorized by the court; (6) the issuing courts lacked jurisdiction; (7) renewals of

---

[2] The Government contends that Mr. Lasher "has standing to challenge only those orders in which he is a named Target Subject."  (Gov't Resp. [598], at 5.) Defendant subsequently concurred with that contention.  (Def.'s Reply [608], at 2.) Thus, the parties agree that Mr. Lasher has standing to challenge the Cobb Superior Court Orders Authorizing the Interception of Wire and Electronic Communications dated May 13 and June 1, 2016.

interception orders failed to provide results of prior interceptions; and (8) the interception orders did not state the period of authorization.  (Def.'s Mot. [556], at 5-6, 11-22.)

In its Response, the Government contends that each of defendant's arguments are without merit (see Gov't Resp. 3-17) and asserts that even if the warrants were invalid, the evidence gathered under their auspices would still be admissible pursuant to the "good faith" exception to the exclusionary rule outlined in United States v. Leon, 468 U.S. 897 (1984).  In his Reply, Mr. Lasher reasserts only the arguments numbered above as (1) and (6) and fails to rebut the Government's contention that Leon applies.  (See Def.'s Reply 2-8.)

## II.   ANALYSIS

### A.   Standards Governing Wiretaps

"Title III of The Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, sets forth numerous requirements the government must meet before electronic surveillance (wiretaps) may be authorized."  United States v. Flores, No. 1:05-CR-558-WSD-JFK, 2007 WL 2904109, at *21 (N.D. Ga. Sept. 27,

2007).[3]  For example, pursuant to 18 U.S.C. § 2518, a wiretap application must

include:

> a full and complete statement of the facts and circumstances relied
> upon by the applicant . . . including details as to the particular
> offense . . ., a particular description of . . . the type of communications
> sought to be intercepted, the identity of the person . . . whose
> communications are to be intercepted, and a full and complete
> statement as to whether or not other investigative procedures have
> been tried and failed or why they reasonably appear to be unlikely to
> succeed if tried or to be too dangerous.

United States v. Gonzalez Perez, 283 F. App'x 716, 720 (11th Cir. 2008) (per

curiam) (alterations in original) (internal marks omitted) (quoting 18 U.S.C. §

2518(1)(b), (c)).

Upon a proper application, a district judge may issue an ex parte order

authorizing the interception of wire communications if

> the judge finds probable cause to believe that an individual is
> committing or has committed a qualifying offense; that particular

---

[3] "Under Georgia law, wiretap orders may be issued 'upon written
application, under oath, of the prosecuting attorney having jurisdiction over the
prosecution of the crime under investigation, or the Attorney General, made before
a judge of superior court,' and the wiretap must be consistent with 'Chapter 119 of
Title 18 of the United States Code Annotated, as amended.'" United States v.
Cordero, No. 1:11-CR-00009, 2011 U.S. Dist. LEXIS 157435, at *27 (N.D. Ga.
Aug. 29, 2011) (quoting O.C.G.A. § 16-11-64(c)), report and recommendation
adopted, 2011 U.S. Dist. LEXIS 151967 (N.D. Ga. Sept. 13, 2011). "Chapter 119
of Title 18 of the United States Code addresses wiretaps in 18 U.S.C. § 2518,
making Georgia's wiretap requirements co-extensive with federal law." Id.

communications concerning that offense will be obtained through such interception; and that the facilities from which, or the place where, the communications are to be intercepted are being used in connection with the offense, or are leased to, listed in the name of, or commonly used by such person.

United States v. Duarte-Rosales, No. 1:05-CR-197-6-TWT, 2008 WL 140665, at *2 (N.D. Ga. Jan. 11, 2008) (citing 18 U.S.C. § 2518(3)(a), (b), (d)); see also United States v. Robles, 283 F. App'x 726, 734-35 (11th Cir. 2008) (per curiam).

In reviewing challenges to Title III intercepts, the Court is mindful that "'wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation.'" United States v. Stokes, No. 96 CR 481 (SAS), 1996 WL 727400, at *5 (S.D.N.Y. Dec. 18, 1996) (quoting United States v. Steinberg, 525 F.2d 1126, 1130 (2d Cir. 1975)). Moreover, "a wiretap order is presumed to be valid, and a defendant has the burden of overcoming the presumption and of proving that the wiretap order was unlawfully obtained." Flores, 2007 WL 2904109, at *22.

## B.    **Defendant's Arguments**

The Court addresses below each of the arguments that Mr. Lasher makes in his Motion in the order that he made them.

6

### 1.   Probable Cause

Defendant contends that the affidavits used to obtain the interception orders here were lacking in probable cause.[4] "Probable cause for a wiretap is the same probable cause required for a search warrant," Duarte-Rosales, 2008 WL 140665, at *2, and "[l]ike other types of warrants, probable cause must exist at the time surveillance is authorized," Flores, 2007 WL 2904109, at *21 (citing United States v. Domme, 753 F.2d 950, 953 (11th Cir. 1985)).   "[P]robable cause exists if the totality of the circumstances indicate that there is a fair probability that the sought for evidence will be obtained."   United States v. Peterson, 627 F. Supp. 2d 1359, 1363 (M.D. Ga. 2008) (citing Illinois v. Gates, 462 U.S. 213, 239 (1983)).   "The probable cause determination of the judge who issued the wiretap order will be upheld if the judge had a 'substantial basis' for concluding that probable cause existed."   Id. (quoting United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990)). The Government does not have a duty to establish probable cause as to the interception of calls involving each possible interceptee named in an application

---

[4] Although defendant's Motion references all four affidavits which led to interception orders, as noted above, he only has standing to challenge the last two. Moreover, his Motion targets only the Fourth Affidavit.  (Def.'s Mot. 3-5, 11-12.) Thus, the Court limits its discussion to that one.

for a wiretap order; the Government need only establish that there was probable cause that the telephone in question is being used in an illegal operation.  United States v. Mayfield, No. 2:16-CR-009-RWS-JCF, 2017 WL 9477736, at *8 (N.D. Ga. Feb. 28, 2017), report and recommendation adopted, No. 2:16-CR-10-RWS-JCF, 2017 WL 4330369 (N.D. Ga. Sept. 29, 2017).

Upon review of the Fourth Affidavit, the Court finds that Officer Smith presented evidence showing Mr. Lasher's involvement in illegal gang-related activities.  Thus, there was probable cause for the Superior Court Judge to issue the interception order.  Specifically, Officer Smith, a Smyrna police officer working with a multi-jurisdictional law enforcement group focused on illegal narcotics investigations in Cobb County, Georgia, described the identification of TT#4 and Christopher Lasher.  The Fourth Affidavit states that TT#4 was identified through interceptions of Target Telephone # 2 ("TT#2"), initially authorized on May 4, 2016.  Officer Smith described a series of text messages between TT#4 and TT#2 on May 6, 2016.  These messages referred to "7 fam," which Officer Smith identified as a reference to GFG.  The message exchange led to a telephone conversation, also on May 6, during which persons using TT#2 and TT#4 discussed initiation into GFG and various matters relating to GFG operations.  Subsequent text messages between the same two target phones concerned the GFG initiation

8

process and the dissemination of GFG paperwork.  On May 8, 2016, in text message conversations between TT4 and TT2, Mr. Lasher followed up with the other party regarding how he was initiated into the GFG and Mr. Lasher discussed his recruitment of members for GFG.

Officer Smith also described how he used open sources to identify the user of TT#4 as Christopher Lasher and about Mr. Lasher's involvement in GFG recruiting.  The affiant described subsequent text messages between TT#4 and TT#2 regarding the arrest of another GFG member for possession of methamphetamine on May 11, 2016.  Over the next several days, TT#4 and TT#2 had text and voice conversations regarding GFG rankings and operations.

The Fourth Affidavit also described the examination of a cell phone obtained from the arrest of a GFG member co-defendant on May 17, 2016.  The cell phone contained screen shots of some of the text exchanges described above.  The cell phone also contained text exchanges between the co-defendant and TT#4 regarding discipline of another GFG member upon that member's release from jail.

Officer Smith obtained PEN Register information on TT#4 and summarized dozens of contacts between TT#4 and other phone numbers associated with GFG members and associates, including GFG member co-defendants.  This information is more than sufficient to provide probable cause that TT#4 was involved in the

9

GFG at a significant level.  The target offenses described in the Application filed by the Cobb County District Attorney to obtain the wiretap order including TT#4 included the Georgia State Street Gang Terrorism and Prevention Act, O.C.G.A. § 16-15-1 et seq.  The Fourth Affidavit identified the Target Subjects as "members and/or associates of a Drug Trafficking Organization (DTO)/Criminal Street Gang known as the Ghostface Gangsters. . . ." (Fourth Affidavit, MCS-COBB WIRE-0283.)  The Affidavit in turn provided probable cause specific to defendant Lasher and his alleged use of TT#4 and tied him to activities outlawed by the statute.[5]  That Officer Smith's investigation as outlined in the Fourth Affidavit focused on the GFG's drug trafficking activity does not mean that defendant Lasher's alleged recruitment and solicitation of new gang members as outlined in that Affidavit was unrelated.  On the contrary, recruitment and solicitation of new members could be

———————————————

[5] This statute enumerates a number of offenses that fall under the umbrella of criminal gang activity, including racketeering (O.C.G.A. § 16-15-3(1)(A)), and any criminal offense committed in violation of the laws of the United States (id. § 16-15-3(1)(I)).  The statute makes it unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity through the commission of any offense enumerated in § 16-15-3(1) (see O.C.G.A. § 16-15-4(a)); and makes it unlawful for any person to cause, encourage, solicit, recruit, or coerce another to become a member or associate of a criminal street gang, to participate in a criminal street gang, or to conduct or participate in criminal gang activity (id. § 16-15-4(e)).

10

one way in which the GFG maintains and expands its alleged drug-trafficking activities. "[P]robable [cause] exists if the totality of the circumstances indicate that there is a fair probability that the sought for evidence will be obtained." United States v. Booker, No. 1:11-CR-255-TWT, 2013 WL 2468694, *15 (N.D. Ga. June 7, 2013). Because the totality of the circumstances as outlined in the Fourth Affidavit showed that there was a fair probability that evidence of gang activity would be obtained, there was probable cause to issue the warrant.

## 2. **Necessity**

Defendant contends that the wiretap applications here fail to meet the required standards of necessity, in that the Government has failed to show that traditional methods of investigation would not suffice. "Pursuant to 18 U.S.C. § 2518, court-ordered electronic surveillance is prohibited unless the government demonstrates the necessity of such techniques." United States v. Wilson, 314 F. App'x 239, 243 (11th Cir. 2009) (per curiam) (citation omitted). "This statute requires that wiretap applications include a 'full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" United States v. Collins, 300 F. App'x 663, 666 (11th Cir. 2008) (quoting 18 U.S.C. § 2518(1)(c)); see also Wilson, 314 F. App'x at 243. "The purpose of this statute

11

is to ensure that wiretapping is not resorted to in situations in which traditional investigative techniques[6] would suffice to expose the crime." Collins, 300 F. App'x at 666. "The affidavit need not show a comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves.'" Id. (quoting United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1987)); see also United States v. Pecheco, 489 F.2d 554, 565 (5th Cir. 1974) ("[T]he purpose of the [necessity] requirement in section 2518(1)(c) is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques.").[7]

"The district court is entitled to broad discretion in analyzing the necessity issue, and the government's showing on necessity must be read in a practical and commonsense fashion." United States v. Newsome, No. CR 108-062, 2008 WL

---

[6] "Traditional investigative techniques include: physical surveillance, cooperating witnesses, informants, controlled drug purchases, pen registers and trap and trace devices." Collins, 300 F. App'x at 667 n.2.

[7] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc).

4820257, at *3 (S.D. Ga. Nov. 4, 2008) (internal marks and citation omitted). "Congress' purpose in conditioning wiretaps upon a showing of necessity was narrow." United States v. Hammond, No. 2:10-cr-0007-JMS-CMM, 2011 WL 201497, at *5 (S.D. Ind. Jan. 18, 2011). "Congress wanted to ensure not that wiretaps are used only as a last resort in an investigation, but that they were not to be routinely employed as the initial step in criminal investigation." Id. (internal marks and citation omitted). Therefore, "the necessity hurdle is not great." Id. (internal marks and citations omitted).

Upon review of the Fourth Affidavit, the Court finds that the necessity element has been satisfied. The Fourth Affidavit describes in some detail physical surveillance being conducted and why additional physical surveillance would not accomplish the goals of the investigation.[8] Some of the Target Subjects used counter-surveillance techniques and used a number of different cars. In these circumstances, without the information provided by electronic surveillance, physical surveillance would have to be conducted around the clock, would risk

_____

[8] Goals included "the nature and full extent and all methods of committing the Target Offenses employed by the Target Subjects;" and identification of all of "the Target Subjects, their accomplices, aiders and abettors, co-conspirators and participants in their illegal activities." (Fourth Affidavit, MCS-COBB WIRE-0279-0280.)

missing significant conduct, and presented a high risk of compromising law enforcement activities. The Fourth Affidavit also explained that the use of grand jury subpoenas would likely not further the goals of the investigation. Because the investigation encompassed a criminal organization, and not one person or course of conduct, the utility of calling either identified Target Subjects or witnesses was limited. Target Subjects were likely to invoke their Fifth Amendment privilege, and without extensive knowledge of the criminal organization, immunization of witnesses "might foreclose prosecution of the most culpable participants in the organization and compromise the investigation." (Fourth Affidavit, MCS-COBB WIRE-0310.)

The Fourth Affidavit also shows that confidential informants and sources had been used, and used effectively, but that the sources were not involved in decision-making for the GFG, and lacked the ability to provide the required information regarding GFG activities. The use of search warrants, consent searches, and trash pulls likewise were described as not presently useful because members and associates of the GFG continually move around to different apartment complexes. The Fourth Affidavit states:

> Because this investigation is aimed at developing prosecutable cases against not only the Target Subjects, but also against sources of supply, substantial customers, and other conspirators, I do not believe that

14

> investigative techniques as intrusive and overt as searches—
> consensual or not—would, at this juncture, permit us to build a case
> against multiple defendants.

(Fourth Affidavit, MCS-COBB WIRE-0313.)

The Fourth Affidavit also described the use of telephone toll records and pen registers, explaining that the information was useful to confirm contacts and historic communications, but could not provide any "real time" information regarding GFG activities. Given the information provided in the Fourth Affidavit, the issuing Superior Court Judges could reasonably conclude that traditional investigative techniques could not, by themselves, further the goals of the investigation. "'This circuit has repeatedly held that, where conventional techniques will not show the entire scope of the conspiracy, a wiretap is permissible, even in those situations where conventional techniques will allow for the arrest and conviction of some members.'" Booker, 2013 WL 2468694, at *14 (quoting United States v. Kelley, Crim. No. 08-00327-CG, 2009 WL 2589086, at *2 (S.D. Ala. Aug. 17, 2009). In other words, absolute exhaustion of traditional investigative methods is unnecessary before seeking the use of electronic surveillance. See United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1986) ("The affidavit need not, however, show a comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure

15

of several investigative techniques that reasonably suggest themselves."). In sum, the necessity requirement was met here.

### 3. <u>Sealing</u>

Defendant asserts that the wiretap recordings were not sealed in a timely manner. The wiretap statute requires that "[i]mmediately upon the expiration of the period of the order, . . . recordings shall be made available to the judge issuing such order and sealed under his direction." 18 U.S.C. § 2518(8)(a). The Government's Response shows that all of the recordings were timely sealed.

The last order regarding interception of TT # 4 used by Mr. Lasher authorized interception "for a period of thirty (30) days from the date of installation and activation of the monitoring devices; or a period of forty (40) days from this order, whichever is earlier." (TT4-LASHER-00163.) The Order was signed by the Honorable Shepherd L. Howell, Senior Judge, on July 29, 2016, and directed return to the Court within forty days of that date, or ten days from the date of the last interception, whichever was earlier. (TT4-LASHER-00170.) The Sealing Order for the disks containing TT # 4 recordings was signed by the Honorable Michael

Stoddard, Presiding Judge, on August 25, 2016.[9]  This date is well within the forty days provided in Judge Howell's Order.  Therefore, the TT # 4 recordings were timely sealed.  See United States v. Nsoedo, No. 1:08-CR-0351-JEC-JFK, 2009 WL 10669746, at *12 (N.D. Ga. July 31, 2009) ("recordings are sealed immediately as required by § 2518(8)(a), 'if they are sealed within one or two days of the expiration' of the order.") (quoting United States v. Matthews, 431 F.3d 1296, 1307 (11th Cir. 2005)).

### 4.   Minimization

Defendant contends, upon information and belief, that law enforcement failed to comply with the minimization requirements of Title III.  In considering challenges to minimization, the court must make an objective assessment of the monitoring agents' actions in light of the facts and circumstances confronting them at the time.  Scott v. United States, 436 U.S. 128, 137-38 (1978).  The wiretap statute does not prohibit the interception of all non-relevant conversations, but rather instructs law enforcement to conduct the surveillance in such a manner as to minimize the interception of such conversations.  The standard is one of

_____

[9] The "Order Directing Custody of Investigative Warrant and Evidence Obtained Under Investigative Warrant" is in the record provided to the Court but it has not been Bates Numbered.

17

reasonableness.  United States v. Gonzalez Perez, 283 F. App'x 716, 722 (11th Cir. 2008); United States v. Moody, 977 F. 2d 1425, 1433 (11th Cir. 1992).  Absent a flagrant violation of the minimization requirements, total suppression of all monitored calls is highly unlikely and, quite probably, inappropriate.  See United States v. Ozar, 50 F.3d 1440, 1448 (8th Cir. 1995) ("'Clearly Congress did not intend that evidence directly within the ambit of a lawful order should be suppressed because the officers, while awaiting the incriminating evidence, also gathered extraneous conversations.  The nonincriminating evidence could be suppressed pursuant to 18 U.S.C. § 2518(10)(a), but the conversations the warrant contemplated overhearing would be admitted.'") (citation omitted); United States v. Suggs, 531 F. Supp. 2d 13, 24 (D.D.C. 2008) (noting that even if the defendant established that minimization efforts were insufficient, the court was unlikely to suppress entire wiretap as remedy, the court stated that "[t]otal suppression 'is not appropriate unless the moving party shows that there was a taint upon the investigation as a whole sufficient to warrant sweeping relief' . . . and is reserved for the 'particularly horrendous case' . . . 'where the government has made effectively no effort towards minimization whatsoever'") (citations omitted); United States v. Batiste, No. 06-20373-CR, 2007 WL 2412837, at *16 (S.D. Fla. Aug. 21, 2007) (errors in minimizing particular calls do not automatically warrant

18

suppression of all intercepts "unless a defendant demonstrates that the entire surveillance was tainted"); United States v. Cleveland, 964 F. Supp. 1073, 1091 (E.D. La. 1997) (noting that Fifth Circuit Court of Appeals had rejected as a remedy for violation of the minimization requirements total suppression of wire intercepts).

The Government has made a prima facie showing regarding the minimization procedure used in this case. Assistant District Attorneys of the Cobb Judicial Circuit provided agents with a memorandum detailing the minimization procedures to be followed. (See Memorandum to "All Personnel Monitoring Court-Ordered Interception of Wire, Wireless, and Oral Communication, hand-stamped 8926-8936.) This is sufficient. See United States v. Bryant, No. CR413-007, 2014 WL 317694, at *6 (S.D. Ga. Jan. 28, 2014) ("the government has met its *prima facie* showing of minimization by including the minimization memoranda along with each wiretap"). "Without some showing on Defendant's part, this Court cannot conclude that the Government did not minimize its interception of non-pertinent calls or that a hearing should be held to require the Government to prove that it properly minimized interception of irrelevant calls." United States v. Najera-

Perez, No. 1:12-CR-232-2-CAP, 2014 WL 888651, at *16 (N.D. Ga.  Mar. 6, 2014).[10]

### 5.    <u>Inventory Notice</u>

Defendant  shows  that  he  was  not  timely  notified  of  the  electronic surveillance in this case as required by 18 U.S.C. § 2518(8)(d).  Thus, he contends that the evidence resulting from the interceptions must be suppressed.  (Def.'s Mot. 17.)  Even if what defendant contends is true, it is irrelevant.  "Failure to give the notice  will  result  in  suppression  only  where  prejudice  results,  <u>United  States  v. Alfonso</u>, 552 F.2d 605 (5th Cir. 1977), and prejudice does not result when actual notice is received, as here, well in advance of the hearing on suppression.  <u>United States v. Iannelli</u>, 477 F.2d 999 (3rd Cir. 1973)."  <u>United States v. Belcastro (Ralph)</u>, No. 84-CR-290, 1985 WL 4034, at *5 (D. Colo. Feb. 5, 1985); <u>see also</u> <u>United</u>

_____

[10] As noted above, defendant initially requested a hearing, <u>inter alia</u>, to obtain discovery regarding whether agents complied with the minimization requirements. (Def.'s Mot. 16.)  However, that request was withdrawn.  (Def.'s Reply 8 n.4.) Although the Government has the burden to show adherence to the statute's requirements, defendant has the initial burden of going forward.  "'A general allegation  that  the  government  did  not  comply  with  statutory  minimization requirements  is  inadequate.'  .  .  .  [T]he  defendant  must  identify  particular conversations so that the government can explain the reason why the conversation was not minimized."  <u>Mayfield</u>, 2017 WL 9477736, at *21 (internal quotation and citation omitted).  Defendant has not met his initial burden.

20

States v. Harrigan, 557 F.2d 879, 884 (1st Cir. 1977) ("[W]e join those courts that have accepted the general proposition that suppression is an appropriate remedy when a defendant can show that the failure to serve an inventory notice caused him actual prejudice and that the prejudice which resulted cannot otherwise be cured.").

Defendant has been provided (through counsel) with the documentation relevant to the court-ordered interception of TT#4. Defendant has actual notice of the wiretap and has not shown that he suffered any prejudice resulting from delayed notice or bad faith on the part of the Government. Therefore, suppression is not an appropriate remedy for any delay in notification. United States v. DeJesus, 887 F.2d 114, 117 (6th Cir. 1989) ("absent a showing of bad faith or actual prejudice . . . the failure to serve [the defendant] with a formal inventory notice does not justify suppression.").

### 6.   **Jurisdiction**

Mr. Lasher argues that the orders authorizing electronic surveillance on TT#4 exceeded the jurisdiction of the issuing Superior Courts. Defendant acknowledges that he has no information to indicate that those courts exceeded their jurisdiction, but asserts that "[b]ecause of the lack of sufficient evidence tying Defendant's use of his phone within the 'territorial jurisdiction of the court . . .' the Cobb County Superior Court lacked jurisdiction under 18 U.S.C. § 2518(3) and

21

applicable state and federal law to authorize wiretaps and intercepts over the Target

Telephones (particularly T4), and over [his] phone, and any wiretaps and intercepts

derived therefrom should be suppressed as illegally obtained."  (Def.'s Mot. 20-

21.)

"[I]n a federal criminal case, federal law typically governs the admissibility

of evidence."  United States v. Govea-Vazquez, 962 F. Supp. 2d 1325, 1329 (N.D.

Ga. 2013), aff'd sub nom. United States v. Lara, 588 F. App'x 935 (11th Cir. 2014);

see also United States v. Mathis, 96 F.3d 1577, 1583 (11th Cir. 1996) ("federal law

determines   the   admissibility   in   federal   criminal   cases   of   communications

intercepted by a state or local officer").  Thus, federal law governs the admissibility

of state wiretap evidence in federal court.  See United States v. Mayfield, No. 2:16-

CR-009-RWS-JCF, 2017 WL 9477736, at *19 (N.D. Ga. Feb. 28, 2017), report and

recommendation adopted, No. 2:16-CR-10-RWS-JCF, 2017 WL 4330369 (N.D.

Ga. Sept. 29, 2017).

Under federal law, if the listening post is in the State of Georgia, the statutory

requirement is met.  See Mayfield, 2017 WL 9477736, at *23; see also Dahda v.

United States, 138 S. Ct. 1491, 1499 (2018) ("[A] listening post within the court's

territorial jurisdiction could lawfully intercept communications made to or from

telephones located within [Georgia] or outside [Georgia].").

22

The Government represents that the interceptions here were monitored by the MCS Organized Crime Task Force at a location within Cobb County, thus meeting the statute's requirement. (Gov't Resp. 15.) Defendant challenges that representation because Officer Smith's Affidavits fail to state the location of the listening post. (Def.'s Reply 7.) However, the Court accepts the representation of the Government's counsel, made as an officer of the Court, that the interceptions here occurred at a location within Cobb County, Georgia.

Even without crediting the representation of the Government's counsel, and assuming that the Georgia courts had exceeded their territorial jurisdiction in issuing the wiretap orders, evidence gathered from the resulting interceptions would not be subject to suppression. As already noted, federal law, which determines the admissibility of wiretap evidence, see United States v. Malekzadeh, 855 F.2d 1492, 1496 (11th Cir. 1988), dictates that "suppression is required only for a 'failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.'" Govea-Vazquez, 962 F. Supp. at 1330 (internal citation omitted). "The Eleventh Circuit held in United States v. Nelson, 837 F.2d 1519 (11th Cir. 1988), that communications intercepted in violation of a

23

state court judge's territorial jurisdiction did not implicate a core concern of Title III, and consequently they did not have to be suppressed." Id. at 1527. Thus, defendant's jurisdictional argument is no basis for suppression of the wiretap evidence in this case.

### 7.    Renewals and Results of Prior Interceptions

Federal law requires that applications to renew electronic monitoring provide information regarding the results from previously authorized electronic surveillance. See 18 U.S.C. § 2518(1)(f). Defendant asserts that renewal applications concerning TT#4 "fail[ed] to include any statement . . . that discuss[ed] the results thus far obtained . . . from the previously authorized intercepts . . . ." (Def.'s Mot. 21.) The Court has reviewed the relevant applications to renew the investigative warrants submitted to the Cobb Superior Court Judges and their supporting affidavits. (See App. for Renewal for TT # 4, dated July 15, 2016, bates number TT4-LASHER-0082-0092, incorporating Officer Tompkins's Aff., bates number TT4-LASHER-0093-00110; and App. for Renewal for TT # 4, dated July 29, 2016, bates number TT4-LASHER-00124-00134, incorporating Officer Tompkins's Aff., bates number TT4-LASHER-00135-00157.) On both occasions, the affiant provided the Superior Court Judge with information describing the

results obtained under the prior interception order.  Thus, defendant's contention is without merit.

### 8.   <u>Interception Orders and Period of Authorization</u>

Defendant contends that the State's intercept authorizations for the Target Telephone were not renewed in each subsequently filed application and affidavit, thus allowing prior intercept authorizations to expire.  In other words, defendant contends that the "intercept authorization for T4 was not maintained through all the time period covered by the affidavits and order authorizations."  (Def.'s Mot. 22.)

Defendant cites no statutory or case law which holds that interception orders must be in place continually.  The wiretap statute states in relevant part as follows:

> (4)   Each order authorizing or approving the interception of any wire, oral, or electronic communication under this chapter shall specify—
>
> …
>
> (e)   the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

18 U.S.C. § 2518(4)(e).  Each of the interception orders here contained the language required by § 2518(4)(e) concerning the period of time during which such interception was authorized.  (<u>See</u>, <u>e.g.</u>, Order of July 29, 2016, TT4-LASHER-

25

00163.)  Thus, defendant's argument concerning the interception orders is without merit.

### C. *Leon*'s Good-Faith Exception Applies

As noted above, defendant does not challenge application of <u>Leon</u>'s good faith exception to the exclusionary rule to these wiretap applications and warrants. "[T]he purpose of the exclusionary rule is to act as a deterrent to willful conduct that violates individual rights."  <u>United States v. Russell</u>, No. 2:08CR121-WHA, 2008 WL 4649051, at *5 (M.D. Ala. Oct. 20, 2008) (internal marks and citation omitted).  <u>Leon</u> modified the exclusionary rule to permit the admission of evidence seized by police in reasonable, good faith reliance on a search warrant that is later held to be unsupported by probable cause.  <u>Leon</u>, 468 U.S. at 920-22.  The Court reasoned that, where an officer's reliance on a warrant is objectively reasonable, no additional deterrent effect will be achieved by excluding the resulting evidence. <u>Id.</u>[11]

---

[11] <u>Leon</u> determined that in four circumstances an officer would <u>not</u> have reasonable grounds, i.e., good faith, to believe that the warrant was properly issued: (1) where the issuing judge was misled by information that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing judge "wholly abandoned his judicial role in the manner condemned in <u>Lo-Ji Sales, Inc. v. New York</u>, 442 U.S. 319 (1979)"; (3) where the

*Leon*'s good-faith exception applies to wiretap evidence. <u>United States v.</u> <u>Lara</u>, 588 F. App'x 935, 938 (11th Cir. 2014); <u>see also</u> <u>United States v.</u> <u>Montemayor</u>, No. 1:09-CR-00551-LMM-JFK, 2018 WL 4517634, at *17 (N.D. Ga. Aug. 27, 2018), <u>report and recommendation adopted</u>, 2018 WL 4517459 (N.D. Ga. Sept. 20, 2018) ("Finally, as the Government correctly notes . . . the good faith exception to the exclusionary rule applies to wiretap applications and orders."); <u>United States v. Acosta</u>, 807 F. Supp. 2d 1154, 1248 (N.D. Ga. 2011) ("the good faith exception to the exclusionary rule applies to wiretap applications and orders") (citing <u>Malekzadeh</u>, 855 F.2d at 1497).

In the instant case, "the law enforcement officers did exactly what the law requires," in that applications and affidavits for the wiretaps at issue were submitted to Superior Court judges, all of whom then "made a probable cause determination." <u>Russell</u>, 2008 WL 4649051, at *5. Given these circumstances, it was objectively reasonable for the agents or officers to conclude that probable cause for the

_____

warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." <u>Leon</u>, 468 U.S. at 923 (internal quotations omitted). Defendant has submitted no evidence or argument suggesting that any of these circumstances exist here. No evidentiary hearing is needed.

warrants existed and for them to rely in good faith on the wiretap orders issued by those judges.  Id.; see also United States v. Degaule, 797 F. Supp. 2d 1332, 1363 n.26 (N.D. Ga. 2011) ("Even if the wiretaps were found to be invalid, suppression of the evidence seized is not warranted because the agents reasonably relied in good faith on the warrants."), report and recommendation adopted, id. at 1344.  In sum, even if the warrants here are invalidated, the evidence gathered under their auspices would still be admissible pursuant to Leon's good faith exception to the exclusionary rule.

**III.**   **CONCLUSION**

For the reasons explained above, the undersigned **RECOMMENDS** that Defendant Christopher Lasher's Motion to Suppress Intercepted Communications Pursuant to Title III [556] be **DENIED**.

**SO RECOMMENDED**, this 2nd day of April, 2019.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE