# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

United States of America,

v.

Christopher Lasher (18),

Defendant.

_____/

Case No. 4:18-cr-00003

Michael L. Brown
United States District Judge

# ORDER

Magistrate Judge Walter E. Johnson recommends denial of Defendant Christopher Lasher's motion to suppress intercepted communications. (Dkts. 556; 659 at 1, 28.) Defendant Lasher has objected to that recommendation. (Dkt. 688.) The Court accepts the Magistrate Judge's recommendation and affirms the denial of Defendant Lasher's motion.

## I.  Background

The United States did not charge Lasher in Count One of the superseding indictment, which alleges a conspiracy by various members of the Ghostface Gangsters to violate federal racketeering laws. But the superseding indictment mentions him in several overt acts that the

government claims were part of the racketeering activity. For example, Lasher allegedly sent a text message to another Ghostface gang member about a person who falsely claimed to be a "Capo," or leader. (Dkt. 279 at 10 (defining the word "Capo" as a leader in the Ghostface gang), 21.) The superseding indictment also alleges that Lasher planned to pick up illegal drugs with another Ghostface gang member. (*Id.* at 22.) In another overt act, it alleges Defendant Lasher traveled to a motel room where other Ghostface gang members were located to sell drugs. (*Id.*) It alleges Lasher possessed drugs on August 22, 2016. (*Id.*) Finally, the superseding indictment alleges that while in prison, Lasher offered to sell and then directed the sale of methamphetamine to an individual. (*Id.* at 28.)

The United States charged Defendant Lasher in Count Two of the superseding indictment. (*Id.* at 32–34.) The United States alleged that he conspired with others to distribute and possess with the intent to distribute methamphetamine from sometime in 2002 until sometime in 2018. (*Id.*)

During the criminal investigation, law enforcement officers obtained a series of wiretaps and intercepted Defendant Lasher using a

phone with the number 470-509-0122, referred to by law enforcement as Target Telephone #4 (TT#4). Defendant Lasher moved to suppress evidence obtained under four wiretap applications presented to and granted by the Cobb County Superior Court: 678-927-4512 (IW 2016-05) ("T1"); 770-895-8914 (IW2016-05) ("T2"); 678-732-5118 (IW 2016-05) ("T3"); and 470-509-9122 (IW 2016-05) ("T4"). (Dkt. 556 at 2.) He subsequently agreed that he lad standing to challenge intercepts of TT#4 only the final two intercepts (specifically, T3 and T4) as he was not a named target of the first two. (Dkt. 659, n.2.)

## II. Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59; *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district judge should "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of*

3

*Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted). For those findings and recommendations to which a party has not asserted objections, the court must conduct a plain error review of the record. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

Parties filing objections to a magistrate's report and recommendation must specifically identify those findings to which they object. *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). "Frivolous, conclusive, or general objections need not be considered by the district court." *Id*. Defendant Lasher both generally relies on the arguments he set out in his motion and specifically objects to some findings in the Magistrate Judge's R&R. The Court thus conducts a plain error review of the portions of the R&R to which neither party offers specific objections and a de novo review of the Magistrate Judge's findings to which Defendant Lasher specifically objects. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373 (N.D. Ga. 2006) ("[I]ssues upon which no specific objections are raised do not so require de novo review; the district court may therefore 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge[,]' applying a clearly erroneous standard.") (quoting 28 U.S.C. § 636(b)(1)).

4

## III. Discussion

As stated above, Defendant Lasher moved to suppress T3 and T4, claiming the applications and intercepts violated the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution; Article I, Section I, Paragraphs III, V, IX, and XII of the Georgia Constitution; Sections 16-11-60 and 17-5-30 of the Georgia Code Annotated; and Sections 2515 and 2518(10)(a) of Title 18 of the United States Code. (Dkt. 556 at 2.) He argued that (1) the interception orders are general warrants lacking probable cause; (2) the government failed to show any need for the use of electronic surveillance; (3) the recordings were not timely sealed; (4) monitoring agents did not comply with minimization requirements; (5) no inventory notice was served, and there was no postponement authorized by the court; (6) the issuing courts lacked jurisdiction; (7) renewals to interception orders failed to provide results of prior interceptions; and (8) the interception orders did not state the period of authorization. (*Id.* at 5–6, 11–22.) Defendant Lasher did not request an evidentiary hearing on his underlying motion. (Dkt. 608 at 8 n.8.)

The Magistrate Judge recommended denial of Defendant Lasher's motion to suppress. In his objections, Defendant Lasher specifically

5

challenges only the Magistrate Judge's recommendation about the wiretap-issuing court's territorial jurisdiction.[1] He argues that the Government failed to prove that the issuing court had territorial jurisdiction over the telephone number subject to the final intercept order (T4); that the government's failure to prove territorial jurisdiction over his communications is a fatal defect requiring all the illegally obtained communications to be suppressed; and that the wiretap evidence the government obtained is not admissible under the good faith exception.

### A. Territorial Jurisdiction

Georgia law requires law enforcement officers seeking a state-ordered wiretap to comply with the federal wiretap statute. Under Georgia law, a superior court judge may issue a wiretap "upon written application, under oath, of the prosecuting attorney having jurisdiction over the prosecution of the crime under investigation, or the Attorney General" so long as the wiretap is consistent with "Chapter 119 of Title

---

[1] Defendant Lasher did not file objections to the Magistrate Judge's recommendation that the Court reject his other grounds for suppressing the wiretaps. The Court thus reviewed those other recommendations under the plain error standard and adopts the Magistrate Judge's analyses and conclusions.

6

18 of the United States Code Annotated, as amended." *Id.* Chapter 119 of Title 18 of the United States Code addresses wiretaps in 18 U.S.C. § 2518, making Georgia's wiretap requirements co-extensive with federal law.

O.C.G.A. Title III of The Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, "permits a judge to issue an order authorizing the Government to intercept wire communications for an initial (but extendable) period of 30 days." *Dahda v. United States*, 138 S. Ct. 1491, 1495 (2018) (citing § 2518(5)).

> "To obtain that order, the Government must submit an application that describes the particular offense being investigated as well as the type of communications it seeks to intercept; that sets forth the basis for an appropriate finding of 'probable cause'; that explains why other less intrusive methods are inadequate, have failed, or are too dangerous to try; and that meets other requirements, showing, for example, authorization by a specified governmental official."

*Id*. (citing § 2518(1)).

> "If the judge accepts the application, finds probable cause, and issues an authorizing order, that order must itself contain specified information, including, for example, the identity of the 'person' whose 'communications are to be intercepted'; the 'nature and location of the [relevant] communications facilities'; a 'particular description of the type of communication sought to be intercepted'; a statement of the 'particular offense' to which the intercept 'relates'; the 'identity of the agency authorized to intercept'; the identity of

7

the 'person authorizing the application'; and 'the period of time during which' the 'interception is authorized.'"

*Id.* (quoting §§ 2518(4)(a)–(e)).

Section 2518 of Title 18 of the United States Code provides that a judge may enter an ex parte order authorizing the interception of a wire, oral, or electronic communication "within the territorial jurisdiction of the court in which the judge is sitting." § 2518(3). The statute defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." § 2510(4). "Thus, under the current version of Title III, 'interceptions' of phone calls are deemed to occur not only at the listening post where the communications are overheard ('aural acquisition'), but also at the situs of the tapped phone from which the contents of the communications are being redirected ('other acquisition')." *Luangkhot v. State*, 736 S.E.2d 397, 400 (Ga. 2013); *see also United States v. Pierre*, 435 F. App'x 905, 908 (11th Cir. 2011) (finding state judge had jurisdiction to issue wiretap warrant where listening post was located within the judge's court's territorial jurisdiction).

The Magistrate Judge concluded T4 met the statute's territorial requirement based on the representation by government counsel that the

8

Marietta Cobb Smyrna ("MCS") Organized Crime Task Force monitored the interceptions at a location within Cobb County. The Court found the lawyer's representation about this sufficient evidence since the lawyer made the representation as an officer of the court. (Dkt. 659 at 23.) Defendant Lasher argues the government submitted no evidence to support its counsel's assertion. (Dkt. 688 at 2.) The government's counsel is an officer of the court and subject to sanctions under Federal Rule of Civil Procedure 11 for making a representation to the Court for an improper purpose. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 (11th Cir. 2003) (explaining that because "lawyers are officers of this court and subject to sanctions under Federal Rule of Civil Procedure 11 for making a representation to the court for an improper purpose . . . [courts] give great deference to such representations and presume them to be true." (footnote omitted)); *see also Holloway v. Arkansas*, 435 U.S. 475, 486 (1978) ("[A]ttorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." (internal quotation marks omitted)). The Court has no reason to doubt the accuracy of the government attorney's representation. Because

the interceptions here occurred in Cobb County, i.e., "at the listening post where the communications [were] overheard," the interceptions occurred within the state of Georgia and within the territorial jurisdiction of the issuing judge's state court. *See, e.g., United States v. Pierre*, 435 F. App'x. at 907–08.

## B. Title III "Core Concerns"

Defendant Lasher also specifically objects to the Magistrate Judge's finding that — even if state law enforcement officers violated the territorial requirements of the federal wiretap statute — suppression would not be necessary because territorial jurisdiction implicates no core concern of Title III. (Dkt. 688 at 2.) The Magistrate Judge based his determination on the Eleventh Circuit's decision in *United States v. Nelson*, 837 F.2d 1519 (11th Cir. 1988). (Dkt. 659 at 23–24 (citing *United States v. Govea-Vazquez*, 962 F. Supp. 2d 1325, 1330 (N.D. Ga. 2013), *aff'd sub nom. United States v. Lara*, 588 F. App'x 935 (11th Cir. 2014)).)

In that case, the Eleventh Circuit discussed a prior decision, *Adams v. Lankford*, 788 F.2d 1493 (11th Cir. 1986), in which "a state prisoner alleged a violation of Title III because 'the district attorney who applied for [a wiretap] order and the judge that authorized the wiretap were not

in the same county as some of the tapped telephones.'" 837 F.2d at 1527 (quoting *Adams*, 788 F.2d at 1498). The *Adams* court "denied relief, holding that territorial jurisdictional limitations did not implicate Congress's core concerns in passing Title III." *Id.* (citing *Adams*, 788 F.2d at 1498–99). Defendant Lasher argues that this position is not uniform throughout the Circuits. Based on the Eleventh Circuit's decisions in *Adams* and *Nelson*, however, the Court agrees with the Magistrate Judge's conclusion that territorial jurisdictional limitations do not implicate Congress's core concerns in passing Title III. *See, e.g.*, *Govea-Vazquez*, 962 F. Supp. 2d at 1331 (finding a magistrate judge did not err in finding that a state court judge's territorial jurisdiction implicates no Title III core concern sufficient to render the intercepted communications unlawful).

C.  **Good Faith Exception**

In his final objection, Defendant Lasher argues that the wiretap evidence the government obtained against him is not admissible under the Good Faith Doctrine. He claims none of the cases the government or Magistrate Judge cited specifically address whether the good faith exception can cure a jurisdictional defect.

Ordinarily, a court must exclude evidence obtained in violation of an individual's rights under the Fourth Amendment. *See United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002). The exclusionary rule is a judicially created remedy to deter future Fourth Amendment violations. *Id.* "And courts rely on it as a 'remedy of last resort, justified *only* where the deterrence benefits of suppression outweigh the substantial social costs of ignoring reliable, trustworthy evidence bearing on guilt or innocence.'" *Lara*, 588 F. App'x at 938 (quoting *United States v. Smith*, 741 F.3d 1211, 1219 (11th Cir.2013) (internal citations and quotation marks omitted)). "Thus, when law enforcement officers exercise good faith, this goal of suppression is not met, and exclusion is not required." *Id.*

This good faith exception does not apply in four instances, specifically when: (1) the judicial officer issues the warrant on a deliberately or recklessly false affidavit; (2) the judicial officer abandons his judicial role; (3) the warrant so lacks any indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that an officer could not reasonably presume it valid. *United States v. Leon,* 468 U.S. 897, 923 (1984).

As an alternative ground to deny Defendant Lasher's motion to suppress, the Magistrate Judge ruled that the government was entitled to the benefit of the good faith exception. Although Defendant Lasher did not respond to the government's good faith exception argument in his reply brief, he did address it in his objections to the R&R.

Having fully reviewed the record, the Court agrees with the Magistrate Judge about the good faith exception. There is no evidence that Agent Eric Smith of the Smyrna Police Department and MCS Narcotics intentionally or recklessly misled the issuing state court judge. There is also no basis to find that the state court judge abandoned his "judicial role" in issuing the wiretap orders or renewals. Similarly, the warrant was not so lacking in indicia of reliability that no reasonable agent could have believed it valid. As the Magistrate Judge noted, Agent Smith's affidavit in support of the T4 application provided probable cause specific to Defendant Lasher and his alleged use of the TT#4 and other activities outlawed by statute, including the alleged recruitment and solicitation of new gang members. No evidence shows the wiretap warrants were so facially deficient that an officer could not reasonably presume them valid. Even if there were a jurisdictional defect in issuing

the wiretap orders, suppression is inappropriate. The Court denies Defendant Lasher's motion to suppress.

## IV. Conclusion

The Court **OVERRULES** Defendant Christopher Lasher's Objections (Dkt. 688), **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. 659), and **DENIES** Defendant's Motion to Suppress Intercepted Communications Pursuant to Title III (Dkt. 556).

**SO ORDERED** this 1st day of July, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE